**BUTLER SEAFOOD, INC., and William H. Butler, Sr., Plaintiffs,**

v.

**James E. GOWDY, Defendant.**

**No. 83–2409–CIV–NESBITT.**

United States District Court, S.D. Florida, S.D.

Dec. 21, 1984.

C. Robert Murray, Jr., Miami, Fla., Jay Stephen Lewis, James L. Drake, Jr., Savannah, Ga., for plaintiffs.

David F. Pope, Tampa, Fla., for defendant.

## ORDER

NESBITT, District Judge.

THE COURT has reviewed the entire Court file after considering the cross-Motions for Summary Judgment filed by the parties and the supplemental memoranda of law filed pursuant to the Court's Order of November 3, 1984, and after due consideration, the Court finds as follows:

■ 1. The Court has reviewed the Bareboat Charter and Sale Agreement entered into between Plaintiff Butler Seafood, Inc. and the Defendant, James E. Gowdy, dated February 20, 1982, specifically for the purpose of determining whether this agreement falls within the Court's admiralty jurisdiction.

To this end, the Court examines the agreement to determine whether it is primarily a contract for sale of the vessel "Sara Virginia", and therefore not within admiralty jurisdiction, or whether the contract also contains a lease provision which is completely separable from the sale provision, which lease provision could be a proper subject of admiralty jurisdiction. *Richard Bertram & Co. v. The Yacht Wanda,* 447 F.2d 966 (5th Cir.1971); *Jack Neilson, Inc. v. Tug Peggy,* 428 F.2d 54 (5th Cir. 1970), *cert. denied,* 401 U.S. 955, 91 S.Ct. 973, 28 L.Ed.2d 238 (1971); *The Ada,* 250 Fed. 194 (2nd Cir.1918).

Under the doctrine laid out in the *Yacht Wanda* and *Tug Peggy* cases, a court reviewing a charter-sale agreement looks to a number of factors in making the sale vs. lease determination. The most important of these are the duration of the charter provision before sale, the specific terms of the charter, and, whether or not the purchase option was exercised before the dispute arose.

Applying the governing principles to this case, the Court concludes that the February 20, 1982 contract was primarily a contract for the sale of the "Sara Virginia." The Court also finds that it does not contain a severable charter provision cognizable in admiralty. In reaching this conclusion, the Court relies primarily on two factors. First, the term of the charter was very short, only nine months. Second, the terms of the agreement do not speak of an *option* to purchase the vessel. Rather, paragraph I of the "Charter Terms" reads "[a]t the end of the Charter Period, the Charterer [Defendant] *shall* purchase the vessel". (emphasis added by Court). Clearly, the language of the agreement indicates that all parties intended this to be first and foremost a contract for sale. Buttressing this finding, the Court notes that the Charter payments specified in the agreement were equal to the mortgage payments still being made by the Plaintiff, indicating that the Defendant was in reality assuming the mortgage even during the "charter" term. Finally, *the Court notes that the Complaint seeks damages solely*

for losses incurred as a result of the Defendant's failure to purchase the boat, as agreed, at the conclusion of the charter term on December 30, 1982.

Accordingly, the Court finds that the Bareboat Charter and Sale Agreement was primarily a contract for sale of the vessel in issue. It does not contain a severable and separate charter provision, and therefore, no part of this agreement is within the admiralty jurisdiction of this Court.

2. Having found that this matter is not within the admiralty jurisdiction of the Court, the Court further finds that venue is improper in the Southern District of Florida.

The only jurisdictional basis for this action is the diversity of citizenship of the parties. As such, venue is governed by 28 U.S.C. § 1391(a). Under this statute, a diversity action can be brought "only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose."

Neither the Plaintiffs nor the Defendant reside in the Southern District of Florida. The Plaintiffs reside in Alabama and Georgia, and the Defendant is a resident of the Eastern District of Texas. Also, the contract in issue was executed in the Middle District of Florida, not the Southern District. In short, there are no allegations in the complaint which would support a finding that venue could be proper in the Southern District of Florida. Finally, contrary to the Plaintiffs' assertions, the Defendant has not waived the right to raise the issue of improper venue.

In the first responsive pleading filed by the Defendant, the Answer, Affirmative Defenses and Counterclaim filed October 19, 1983, the Defendant's Fourth Affirmative Defense alleged that venue was improper in the Southern District of Florida. The subsequent activities of the Defendant in actively litigating this matter pending decision on the venue issue did not constitute a waiver of that objection. Rather, it was simply a necessity that Defendant proceed with the suit, lest the Court have

found this case to have been within its admiralty jurisdiction, and therefore properly within this district.

3. Upon review of the file, the Court finds that this suit might properly have been brought originally either in the Middle District of Florida, the District where the agreement was entered into, or in the Eastern District of Texas, the Defendant's residence. However, it is not the proper function of this Court to transfer this case to one of these districts, thereby usurping the Plaintiffs' right to select the venue in which they would prefer to litigate. Accordingly, it is

ORDERED AND ADJUDGED that this action be and the same is hereby DISMISSED without prejudice to the rights of the Plaintiffs to re-file this action in a judicial district where venue is proper.

4. In light of the dismissal of this case, as set out in paragraph 3 of this Order, it is

ORDERED AND ADJUDGED that the Plaintiffs' Motion for Summary Judgment and the Defendant's Motion for Summary Judgment both be and the same are hereby DENIED AS MOOT.